# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **TINA WHITTEN DAMONE,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Civil Action Number |
| | ) 6:14-cv-02011-AKK |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Tina Whitten Damone ("Damone") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 205(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.     Procedural History

Damone filed her application for Title II Disability Insurance Benefits on May 17, 2011, alleging an onset date of May 11, 2011 (which she later amended to May 22, 2011) due to problems in both feet, fibromyalgia, arthritis, edema in hands

and feet, attention deficit disorder ("ADD"), and anxiety. (R. 44, 122, 131, 165). After the SSA denied her application, Damone requested a hearing before an ALJ. (R. 86-86, 89-112). At the time of the hearing on November 6, 2012, Damone was 50 years old, had completed twelfth grade, and had past relevant work experience as a mental health technician, a stocker, and a cashier. (R. 45, 51). Damone had not engaged in substantial gainful activity since May 22, 2011. (R. 41).

The ALJ subsequently denied Damone's claim on March 5, 2013, (R. 6, 24), which became the final decision of the Commissioner on September 22, 2014 when the Appeals Council refused to grant review, (R. 1-3). Damone then filed this action pursuant to § 205(g) on October 21, 2014. Doc. 1.

## II.    Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or

mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. See 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV. The ALJ's Decision

In performing the five-step analysis, the ALJ found that Damone had not engaged in substantial gainful activity since May 22, 2011 and therefore met Step One. (R. 11). Next, the ALJ found that Damone satisfied Step Two because she suffered from the severe impairments of "first right toe arthritis status post reconstructive surgery, lumbar degenerative disk [sic] disease, affective disorder and personality disorder." (R. 12). The ALJ then proceeded to the next step and found that Damone did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the [listed] impairments." (R. 13). Although the ALJ answered

Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Damone:

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she is capable of lifting and carrying [twenty] pounds occasional[ly] and ten pounds frequently. She can sit for a total of six hours in an eight-hour day, and stand and walk in combination for a total of six hours in an eight-hour day. She can frequently balance or kneel and occasionally climb ramps or stairs, stoop, crouch or crawl. She is unable to climb ladders, ropes, or scaffolds, or perform in concentrated exposure to extreme cold temperatures or work hazards. She can remember, understand, and carry out simple instructions but not detailed ones. Contacts with the public should be casual and criticism should be non-confrontational. Any changes in the work setting should be introduced gradually.

(R. 16). In light of Damone's RFC, the ALJ determined that Damone "is unable to perform any of her past relevant work" as a mental health technician, stocker, cashier, dispatcher, or traffic manager. (R. 22). Lastly, in Step Five, the ALJ considered Damone's age, education, work experience, and RFC, and determined that Damone "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* Therefore, the ALJ found that Damone "has not been under a disability, as defined in the Social Security Act, from May [22], 2011." (R. 23).

### V.     Analysis

Damone asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) failed to appropriately consider the opinion of Dr.

Derrick Bowling, Damone's treating physician; (2) erred in discrediting Damone's pain testimony; and (3) inappropriately considered the fact that Damone had continued working while showing symptoms similar to those alleged in her disability application. *See* doc. 13 at 24-41. None of these contentions, however, establish that the ALJ committed reversible error.

   1. *The ALJ did not err by affording Dr. Bowling's opinions and conclusions limited weight.*

Relying on Eleventh Circuit law that an ALJ give "substantial or considerable weight" to the medical opinion of the claimant's treating physician unless "good cause" is shown,[2] *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004), Damone argues that the ALJ erred by affording the medical conclusions and opinions of Dr. Bowling, her treating physician, limited weight.[3] *See* doc. 13 at 24-35. To support her contentions, first, Damone disputes the ALJ's finding that Dr. Bowling's opinion about Damone's functional capacity was not bolstered by the evidence. The substantial evidence supports the ALJ's decision. Dr. Bowling stated in his October 2012 opinion that Damone should only sit for 1-

---

[2] "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Moreover, "[w]hen electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his] reasons." *Id.*

[3] The ALJ did, however, afford significant weight to Dr. Bowling's treatment notes because "they show the status of [Damone's] impairments over a long period and support no more than moderate limitations." (R. 21). Damone takes issue not with the weight afforded the treatments notes but, instead, with the weight the ALJ assigned to Dr. Bowling's opinions and conclusions offered to the SSA regarding Damone's functional capacity. *Id.*; *see* (R. 472-89).

2 hours a day, stand for 1-2 hours a day, and walk a total of 2-3 hours a day, (R. 473), and that "her pain is actually exceptional" and limits her ability to sit, stand, balance, and generally stay upright, (R. 485-88). However, as the ALJ pointed out, (R. 19-20), Damone's own statements about her daily activities discredit Dr. Bowling's findings; in her application, Damone stated that every day she cleans her house, walks her dog, and visits her parents, and that almost every day she watches sports, swims, plants flowers, and does arts and crafts, (R. 197-201). Additionally, Damone handles her own personal care and hygiene. (R. 43, 172, 198).

The ALJ also noted that Dr. Bowling's findings were "particularly" inconsistent with the objective medical imaging evidence. (R. 21, 382). The 2008 and 2009 images revealed that Damone's abnormalities were "mild" and "minimal," and the 2011 image raised concerns—although "unlikely"—that Damone had a fractured toe. (R. 258, 382, 391, 393). Although Dr. Bowling indicated that Damone's pain was more significant than the mild findings that her images indicated because of her consistent allegations of significant pain, (R. 485), the ALJ correctly noted that these allegations of significant pain seemed to follow specific flare-ups, (R. 20). For example, Damone presented with significant pain when: she ran of pain medication prior to her appointment (R. 292); she had a vitamin B12 deficiency, (R. 310); she stood "a lot" during the day, (R. 315); she

was dealing with significant stress from work or family, (R. 320, 361, 372); she had fallen or twisted her foot, (R. 351, 372, 388); and her father had physically attacked her, (R. 381). These types of exceptional circumstances cannot support Dr. Bowling's general assertion that the imaging does not appropriately reflect Damone's pain level. In light of Damone's daily activities and the objective medical imaging, the ALJ's decision to discount Dr. Bowling's opinions and conclusions because they were not bolstered by the evidence is supported by substantial evidence.

Second, Damone contests the ALJ's finding that Dr. Bowling's October 2012 opinions and conclusions were inconsistent with Dr. Bowling's own medical records. Although his opinion asserts significant limitations on Damone's ability to sit, stand, and walk, Dr. Bowling's treatment notes variously indicate that Damone "ha[d] been doing fairly well since her last visit," her fibromyalgia "stayed relatively stable," she "ha[d] been physically active," she "was moving things that were very heavy," she is "stable on her current pain regimen," and she was "tolerating [her medications] well," among other, similar statements. (R. 307, 310, 315, 323, 326, 337, 348, 358-59, 374, 377-78, 384). Because Dr. Bowling's treatment notes contradict his allegations of Damone's functional limitations, the ALJ correctly gave Dr. Bowling's opinion little deference.

Third, Damone argues that the ALJ erred in giving significant weight to Dr. Michael Holt's mental health analysis instead of Dr. Bowling's opinions. *See* doc. 13 at 33-35. As a threshold matter, the court notes that Dr. Bowling's functional opinion gave no finding indicating that Damone's mental health impacted her ability to engage in substantial gainful activity, (R. 472-88), so Damone's argument that the ALJ improperly weighted Dr. Holt's mental health opinion over Dr. Bowling's fails at the outset. Moreover, the ALJ afforded Dr. Bowling's treatment records—which include his observations on Damone's mental health—significant weight because, as Damone correctly identifies in her brief, these records show Damone's mental state over an extended period. (R. 21). Although Dr. Holt's findings and Dr. Bowling's treatment support no more than moderate limitations based on Damone's mental conditions, the ALJ nonetheless considered Damone's claims "by restricting her to simple work activity with limited social interaction and gradual work changes." (R. 21). In any event, the ALJ acted within his discretion when assigning Dr. Holt, an examining psychologist, significant weight, because Dr. Holt's findings were consistent with the record as a whole. *See Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004) (holding that the ALJ did not err in relying on the consulting psychiatrist's findings when they were supported by the record); *Jarrett v. Comm'r of Social Sec.*, 422 Fed. App'x 869, 873 ("The weight due to a non-examining physician's opinion

depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence.").

In light of the fact that the ALJ's decision to discredit Dr. Bowling's functional opinion and to grant Dr. Holt's mental health opinion significant weight is supported by substantial evidence, and because the ALJ properly articulated that he discredited Dr. Bowling's opinion because it was "inconsistent with other medical evidence, his own records and particularly with the objective diagnostic imaging," (R. 21), Damone cannot find relief on this ground.

> 2. *The ALJ acted within his discretion when determining that Damone's assertions of pain were "not entirely credible."*

Damone also argues that the ALJ erred by finding "not entirely credible" her statements concerning the intensity, persistence, and limiting effects of her symptoms. *See* doc. 13 at 36; (R. 18). At issue here is the ALJ's finding that although Damone's medically determinable symptoms "could reasonably be expected to cause [her] alleged symptoms," the alleged "intensity, persistence and limiting effects of those symptoms" were not entirely credible. (R. 18). Based on the record, the court agrees.

When faced with a claimant who shows that a "medically determinable impairment . . . could reasonably be expected to produce [the alleged] symptoms," the ALJ must evaluate the "intensity and persistence" of the alleged symptoms to

determine if they limit the claimant's capacity for work.[4] 20 C.F.R. §§404.1529(b)-(c). Factors to consider include: the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; measures the claimant has taken to relieve pain; and other factors concerning functional limitations. *Id.* If an ALJ rejects a claimant's pain testimony, he must articulate reasons for that decision; otherwise, as a matter of law, the claimant's testimony is accepted as true. *Hale*, 831 F.2d at 1012.

The ALJ extensively outlined his reasons for discrediting Damone's subjective pain symptoms.[5] For example, as discussed above, substantial evidence supports the ALJ's findings that Damone's daily activities—such as walking her dog and cleaning her house—do not support a finding of a disabling impairment. Moreover, when evaluating her compliance with treatment, the ALJ noted that Damone continues to smoke despite repeated medical advice to the contrary. (R. 223, 236-38, 261, 283, 338, 341, 366, 384, 388, 468). In fact, one doctor refused to

---

[4] The ALJ here did not explicitly apply the *Hand* standard that the Eleventh Circuit outlines for pain; however, the ALJ's analysis makes clear that he appropriately relied upon the standard in making his credibility determination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) ("Although the ALJ d[id] not cite or refer to the language of the three-part test . . . his findings and discussion indicate that the standard was applied. Furthermore, the ALJ cites to 20 C.F.R. § 404.1529, which contains the same language regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard.").

[5] Damone also alleges that the ALJ failed to appropriately consider the combined effect of her alleged impairments when determining Damone's pain and overall condition. Doc. 13 at 36. However, the ALJ explicitly stated that Damone "d[id] not have an impairment or combination of impairments" to substantiate a finding of disability, thus satisfying the required showing. (R. 13); *see Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the ALJ's finding that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one [in the listings]" is sufficient to show that the ALJ had considered the impairments in combination). The court is accordingly unconvinced by Damone's argument.

pursue more aggressive treatment because it "may be doomed for failure" given Damone's smoking habit. (R. 261). Also, as discussed above, the ALJ's determination that the treatment records indicate that "except for exacerbations, [Damone's] pain is generally controlled with medications," (R. 18), is supported by substantial evidence. The ALJ also noted that Damone's symptoms were similar to those alleged prior to her date of onset but that she had "sustained work activity at a greater capacity than determined in this decision," a finding which, discussed below, is also supported by substantial evidence. (R. 18).

Additionally, the ALJ noted two troubling aspects of Damone's application. First, Damone asserts that Dr. Bowling instructed her to stop working and that she should carry no more than five pounds at a time, (R. 40-41), but this advice is not found in Dr. Bowling's treatment notes. Second, Damone asserted multiple times to Dr. Bowling and others that her parents had dementia, (R. 261, 366, 372, 381), but then denied this fact in her hearing, (R. 42). The inconsistencies mentioned above, combined with the inconsistencies with the objective medical evidence, establish that the ALJ's decision not to fully credit Damone's subjective testimony is supported by substantial evidence.

Further supporting the ALJ's decision is the fact that, notwithstanding his determination that Damone's subjective pain assertions were not entirely credible, the ALJ still considered her complaints when determining her RFC. Regarding her

right toe arthritis, the ALJ limited Damone to a "light level of exertion that requires lifting no more than [twenty] pounds occasionally and ten pounds frequently," even though he explicitly notes that her treatment notes do not support such a restrictive finding. (R. 19-20). Similarly, the ALJ's determination that Damone should be restricted to "limited sitting, standing and walking in combination and limited postural movements" considered Damone's complaints of severe back pain, even though these complaints are not supported by the objective medical evidence. (R. 20). Finally, notwithstanding that Damone presented no testimony regarding functional limitation due to mental health, the ALJ expressly incorporated Damone's assertions in his decision to restrict Damone to "simple work activity with limited social interaction and gradual work changes." (R. 21).

Based on this record, the ALJ's decision to deem Damone's pain severity "not entirely credible" is supported by substantial evidence. Therefore, the court denies this ground for relief.

> 3. *The ALJ did not err by considering Damone's symptoms and her prior work history when making his determination.*

Damone also argues that the ALJ erred when he found that the "alleged disabling impairments were present at approximately the same level of severity prior to the alleged onset date[, and] the impairment did not prevent [Damone] from working at that time, strongly suggest[ing] that [her current symptoms] would

not currently prevent work activity." (R. 18-19). Unfortunately for Damone, her self-reported daily activities, Dr. Bowling's treatment notes before and after Damone's alleged onset date remarking that Damone's pain regimen managed her discomfort,[6] and the ALJ's finding that pain was mostly exacerbated by flare-ups belie her contention of error. Moreover, to the extent that Damone believes the ALJ's use of Damone's prior work history to support his finding that she is not disabled is "offensive[ and] illogical," doc. 13 at 40, she has presented no authority which prohibits the ALJ from considering such evidence. In fact, the Eleventh Circuit seems to condone this type of reasoning. *See Osborn v. Barnhart*, 194 Fed. App'x 654, 662-63 (11th Cir. 2006) (noting that the claimant's ability to work notwithstanding allegations of significant migraine headaches weighed against a finding of disability); *see also N.L.R.B. v. McClain of Georgia*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting argument and citations to authorities, are generally deemed to be waived.").

## Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Damone is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the

---

[6] Damone's treatment records also indicate that at multiple points throughout 2011 and 2012, her pain was described as "improved." (R. 439, 447, 455, 463).

commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

    **DONE** the 27th day of October, 2015.

                                            **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE